IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DEANDRE WILLIAMS,                    )
                                     )
        Plaintiff,                   )
                                     )
        v.                           )          Case No. 3:03-cv-842-WDS
                                     )
RANDALL L. MITCHELL,                 )
                                     )
        Defendant.                   )

**REPORT AND RECOMMENDATION**

This matter has been referred to Magistrate Judge Donald G. Wilkerson by Senior District Judge William D. Stiehl pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the Motion for Summary Judgment filed by the Defendant, Randall L. Mitchell, on March 10, 2006 (Doc. 25). For the reasons set forth below, it is **RECOMMENDED** that the motion be **GRANTED** and that the Court adopt the following findings of fact and conclusions of law:

FINDINGS OF FACT

At the time of the allegations in the complaint, October, 2002, the Plaintiff, DeAndre Williams, was an inmate at the Big Muddy River Correctional Center. His sole remaining claim[1] is that the Defendant, Randall L. Mitchell, a correctional officer, grabbed him around the neck and started choking him when he refused to obey an order to tie his boots (Complaint at pp. 2-3). Williams alleges that he refused to obey because he had hurt his back when he slipped in the shower prior to his contact with Mitchell.

The undisputed evidence reveals that Williams was being escorted by Mitchell from

_____

[1] The other counts in the complaint were dismissed by the March 2, 2005 28 U.S.C. §1915A screening order.

health services to the boot camp (DeAndre Williams Deposition p. 14).  Williams was in health

services because he had hurt his back when he slipped in the shower.  As Williams and Mitchell

were in the hallway immediately outside of health services, the following occurred:

> A. I [Williams] was coming out of the hall. He [Mitchell] was
> walking beside me and he gave me a direct order to tie up my
> boots.  And I told him I can't bend over and tie my boots right
> now.  So he sort of collared me up.  And I gave him a look, sort of
> let go.  He told me to do nose and toes.  Right when he grabbed
> me, I asked to speak to his superior officer.
>
> Q.  So the first thing he did was kind of grabbed – did he grab your
> neck or shirt?
>
> A.  Grab me up in the neck.
>
> Q.  Did he have you against the wall?
>
> A.  No.  I was just walking and he just turned around and he was
> like, tie up your boots.  And I was like, I can't bend over and tie up
> my boots.  So he grabbed me.
>
> Q. Okay.
>
> A.  And I sort of gave him a look.  He took his hand down and he
> was like, get up against the wall.  So I got up against the wall.
>
> * * *
>
> Q.  Okay.  So how long did you have to hold this nose and toes
> position?
>
> A.  I had to stand nose and toes for about 20, 25 minutes until
> Lieutenant Butler arrived.
>
> (Williams Dep. pp. 15-17).

In clarifying the allegations in the complaint, the following exchange occurred:

> Q.  Okay.  Then you say [in the complaint]: 'Plaintiff had
> knowledge that at any time he could utilize his right to quit.  Then
> again the Defendant aggressively stated to Plaintiff, I told you to

2

bend over and tie your boots up.  Next Defendant with his hands around Plaintiff's neck, threw Plaintiff's face against the healthcare hallway wall."

A.  It wasn't – it wasn't that extreme like that, but he grabbed me and sort of directed me toward the wall, or whatever.

\* \* \*

Q.  Did he throw you against the wall?

A.  He didn't throw me.  I didn't give him enough time to actually throw me anywhere.

\* \* \*

Q.  Okay.  Are you saying that you did not bounce off the wall?

A.  No, I did not bounce of the wall.  No, I did not.

Q.  Are you also saying that Officer Mitchell did not throw you against the wall?

A.  What I'm saying is that he didn't – I didn't give him a chance to actually fully go through with his directing me towards the wall because it was like he grabbed me and I sort of looked at him and pulled off, but my direction was going towards the wall.  He did not slam me physically.  I'm not saying he grabbed me and slammed me through the wall.  No, I'm not saying that at all.

Q.  You are saying he grabbed you by the neck?

A.  Yes, ma'am.

Q.  And how long did he grab you by the neck?

A.  Had to be for a few seconds, you know what I mean.  Grabbed me.  Enough time for me to like sort of pull back and look at him and, you know.  And he was like trying to direct me towards the wall against the wall, you know.

(Williams Dep. pp. 29-30, 32-33)

This is the extent of Williams' contact with Mitchell.  He neither saw Mitchell nor spoke to

3

Mitchell after this event.  Thus, Williams' recollection of the events is that Mitchell grabbed him

by the neck for a few seconds after he exited health services and directed him to a wall.

Williams then was ordered to do nose and toes for 20 to 25 minutes until another officer arrived.

Williams indicated that his entire contact with Mitchell lasted 15 minutes (Williams Dep. at pp.

25-26).

As a result of these actions, Williams injuries were described:

> Q.  Okay.  Now here you say that you were in pain as you stood
> there were nose and toes.  Can you explain to me what pain you
> were in?
>
> A.  Well the pain it was still, you know, it was still like I had
> stiffness in my back and it was just – I don't know if you ever had
> back trouble, but it's like a constant pain that goes through your
> buttocks, or whatever.
>
> Q.  Okay.
>
> A.  So I had this pain going on and it was a little hard for me to be
> straight up.  I was sort of bent over a little bit.
>
> Q.  All right.  Is this pain that you experienced as a result of your
> slipping in the shower?
>
> A.  Yes, ma'am.
>
> *  *  *
>
> Q.  So you're saying the shower along with Officer Mitchell's
> actions aggravated your back injury?
>
> A.  Being made – I feel like I shouldn't have had to stand up and
> do nose and toes, staying in seg, I didn't get any medical treatment
> period until almost a year later.
>
> (Williams Dep. pp. 33, 43-44).

In the remainder of Williams' testimony he indicates that he had pain that prevented him from

being as "physical" as he needed to be in order to continue participating in the boot camp

4

program (Williams Dep. pp. 34). In response to a question of whether he thought that his back injury would prevent him from participating in the boot camp, Williams responded "No, I don't think that.  I was doing 2,000 push ups a day.  Plus I had advantage on everybody there.  I was older and plus I had prior service [in the military] experience, so that was a cake walk" (Williams Dep. pp. 34).

Williams also testified to some psychological conditions that resulted from his treatment at Big Muddy.  He testified that as a result of the investigation into Mitchell's conduct, the lack of medical treatment for his back, and the fact that he was not allowed to re-enter boot camp, he "ended up having a nervous breakdown and tried to commit suicide" (Williams Dep. at pp. 21-23).  Williams currently is seeking social security benefits as a result of his back condition and psychological problems (Williams Dep. at p. 40).  At the time of his deposition, Williams was receiving psychiatric counseling and was going to start physical therapy for his back. (Williams Dep. at pp. 42-43).

On March 13, 2006, this Court issued a Federal Rule of Civil Procedure 56 Notice pursuant to <u>Lewis v. Faulkner</u>, 689 F.2d 100 (7th Cir. 1982).  In that notice, the Plaintiff was informed of the summary judgment procedure and was warned that the failure to submit evidence may result in a judgment against him.  The Plaintiff's response to the motion for summary judgment is not a sworn statement, nor is his complaint, filed on December 12, 2003.

CONCLUSIONS OF LAW

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Haefling v. United Parcel Service, Inc., 169 F.3d 494, 497 (7th Cir. 1999); Dempsey v. Atchison, Topeka and Santa Fe Railway Company, 16 F.3d 832, 836 (7th Cir. 1994). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 160 (1970); Miller v. Borden, Inc., 168 F.3d 308, 312 (7th Cir. 1999). A fact is material if it is outcome determinative under applicable law. Hardin v. S.C. Johnson & Son, Inc., 167 F.3d 340, 344 (7th Cir. 1999); Smith v. Severn, 29 F.3d 419, 427 (7th Cir. 1997); Estate of Stevens v. City of Green Bay, 105 F.3d 1169, 1173 (7th Cir. 1997). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. Plair v. E.J. Brach & Sons, Incorporated,105 F.3d 343, 346 (7th Cir. 1997); Lawshe v. Simpson, 16 F.3d 1475, 1478 (7th Cir. 1994); Dempsey, 16 F.3d at 836. Finally, summary judgment "will not be defeated simply because motive or intent are involved." Roger v. Yellow Freight Systems, Inc., 21 F.3d 146, 148 (7th Cir. 1994). See also, Miller,168 F.3d at 312; Plair, 105 F.3d at 347; Hong v. Children's Memorial Hospital, 993 F.2d 1257, 1261 (7th Cir. 1993); Lac Du Flambeau Indians v. Stop Treaty Abuse-Wisconsin, Inc., 991 F.2d 1249, 1258 (7th Cir. 1993).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury

might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

> Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

See also, Celotex Corporation v. Catrett, 477 U.S. 317, 322-23 (1986); Haefling, 169 F.3d at 497-98; Sybron Transition Corporation v. Security Insurance Company of Hartford, 107 F.3d 1250, 1255 (7th Cir. 1997); Weinberger v. State of Wisconsin, 105 F.3d 1182, 1188 (7th Cir. 1997).

The plaintiff's only claim is that the defendant employed excessive force during the hallway incident in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.[2]  In analyzing such a claim, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); DeWalt v. Carter, 224 F.3d 607, 619 (7th Cir. 2000).  Factors to be considered include "the need for an application of force, the relationship between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent

---

[2] In the 28 U.S.C. §1915A screening order, the District Court construed the allegations in the complaint, that Mitchell grabbed the plaintiff by the neck, choked him, threw him against a wall, and compelled him to do nose and toes, as a claim asserting excessive force and labeled the claim Count 3 (as it was labeled in the complaint).

of the injury suffered by the prisoner." Id. The "de minimis use of physical force" cannot lead to a Constitutional violation. Id. at 619-620; See also Fillmore v. Page, 358 F.3d 496, 504 (7th Cir. 2004) (stating that "the quantum of force required for a constitutional violation is that which is 'repugnant to the conscience of mankind'" (quoting Hudson, 503 U.S. at 10)). Thus, if the force is *de minimis*, the inquiry ends. However, if the force is more than *de minimis*, the factors listed above are analyzed in order to determine whether the facts, taken in a light most favorable to the plaintiff, show conduct that violates the Constitution.

The basis of the plaintiff's complaints against the defendant changed dramatically from the complaint to the plaintiff's deposition. Based on the plaintiff's deposition, the only evidence on record, no jury would find that the defendant assaulted the plaintiff: the plaintiff's only testimony is that the defendant momentarily grabbed him by the neck and directed him to a wall. The need for this action arose when the plaintiff refused to tie his shoelaces. The "grabbing" only lasted a few seconds and was insufficient to completely immobilize the plaintiff as he was capable of pulling away. The defendant also did not slam the plaintiff against the other wall or subsequently touch him in any manner. There is no evidence that the plaintiff suffered any harm from this limited action. This force, then, is *de minimis*, and does not come close to violating the plaintiff's Constitutional rights. No jury would find for the plaintiff on this claim.

The plaintiff's deposition testimony instead reveals that the plaintiff is complaining that his back injury was aggravated by having to stand, nose and toes, for twenty to twenty-five minutes in the hallway.[3] He further testified that the defendant's conduct, in some manner,

---

[3] In the defendant's memorandum, he states, as his second "material facts claimed to be undisputed," that "the pain the plaintiff experienced from doing 'noes and toes' was from plaintiff slipping in the shower." While the plaintiff's deposition testimony is not a model of

contributed to his mental problems and depression.  No jury would find that being made to stand against a wall for twenty to twenty-five minutes is excessive force.  There is no indication that the defendant held the plaintiff against the wall or did anything other than tell him to stand against the wall.  In addition, there is no indication in the record that the defendant knew about the plaintiff's back condition.  The only evidence is that the defendant was escorting the plaintiff from health services, that he told the plaintiff to tie his shoelace, that the plaintiff stated that he could not, and that the defendant then told the plaintiff to stand against the wall.  There is no showing that the defendant was specifically aware of the back condition.  Any such force used, then, was *de minimis*.  The plaintiff has come forth with no evidence from which a reasonable jury could find that the defendant used excessive force.[4]

### CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that the Motion for Summary Judgment filed by the Defendant, Randall L. Mitchell, on March 10, 2006 motion be **GRANTED** (Doc. 25) and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties shall have ten (10)

---

clarity, this "undisputed material fact" is not entirely accurate.  In response to the question "can you explain to me what pain you were in" while doing nose and toes, the plaintiff essentially stated that he had stiffness in his back and a constant pain (Williams Dep. pp. 33-34).  He also appears to indicate that a number of factors, including doing nose and toes, aggravated his back condition (Williams Dep. pp. 43-44).  If the evidence is taken in a light most favorable to the plaintiff, it could be concluded that while the plaintiff's back injury was the result of slipping in the shower, this injury was aggravated by having to stand straight with his nose and toes touching a wall for 20 to 25 minutes.

[4] Count 3 of the complaint was construed in the 28 U.S.C. §1915A screening order as asserting only a claim of excessive force.  This Court's recommendation is limited to the construction of this claim in the screening order and the arguments made by the parties.

days after service of this Recommendation to file written objections thereto.  The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals.  <u>Snyder v. Nolen</u>, 380 F.3d 279, 284 (7th Cir. 2004); <u>United States v. Hernandez-Rivas</u>, 348 F.3d 595, 598 (7th Cir. 2003).


**DATED: June 8, 2006**


<u>**s/ Donald G. Wilkerson**</u>
**DONALD G. WILKERSON**
**United States Magistrate Judge**